Livingston v. Rogers.

JOHN R. LIVINGSTON, *Plaintiff in Error, against* WIL-
LIAM ROGERS, *Defendant in Error.(a)*

Parol evidence of the contents of a letter of attorney, by the person to whom
it was given, is admissible, if it is proved satisfactorily, that such power has
been lost [without bad faith.]
Upon the admission of such testimony, should the trial disclose evidence or
reasonable grounds of suspicion of a suppression of the instrument, of *mala
fides* in the person offering the testimony, or should the evidence of its ex-
istence and legal efficacy not be clear and satisfactory, it will become the
duty of the judge to direct and charge the jury for the defendant. Per
*Gold,* Senator.

THIS cause came before the court, on a *bill of exceptions*
to an opinion of a judge of the supreme court, at the cir-
cuit.

The plaintiff here, who was also plaintiff below, commen-
ced an action in the supreme court, to recover from the de-
fendant the difference on a stock contract, dated the 19th of
March, 1792, by which the latter promised to receive from
him twenty shares of the bank of the United States, on the
1st of June, 1793, and to pay for them at the rate of 78 per
cent. advance.

The defendant pleaded *non assumpsit.*

[*489]     *On the trial the plaintiff, to establish a tender of
the stock, offered a witness, who proved, " that on
the 1st June, 1793, he attended in person at the banking
house of the United States, in the city of Philadelphia, at the
request of the plaintiff, and, as his attorney, to transfer twen-
ty shares of the said bank stock to the defendant, pursuant to
the agreement stated in the declaration ; that a few days pre-
vious to his attendance at the banking house, he received
from John Wilkes, a notary public, residing in the city of
New York, a letter of attorney, signed by the plaintiff, with
whose hand-writing he was well acquainted, and the execu-
tion of which was attested by the said Wilkes, in his capa-

(a) S. C. 1 Caines' Cases in Error, xxvii.

Livingston v. Rogers.

city of notary, and under his notarial seal; that he attended with the said letter of attorney, and twenty shares of the bank stock aforesaid, at the banking house, on the said 1st day of June, and continued there during all the time when the said stock could be transferred, and offered, by virtue of the said letter of attorney, to transfer the said twenty shares to the defendant, for and in behalf of the plaintiff. That he gave several days' notice to the defendant, by directions of the plaintiff, that he should attend at the said bank, on the said day, for the purpose aforesaid.

" That no person appearing to receive or pay for the said stock, he left the said banking house without making an actual transfer thereof, and put the said letter of attorney into his iron chest, of which he alone kept the key. That he never delivered the said letter of attorney to the plaintiff, and, that the plaintiff never had or saw it after his offer to transfer as aforesaid. That he considered the said letter of attorney as belonging to himself, and that the plaintiff never gave him any directions to keep or destroy it. That he did not know it would be of any use to produce the said letter of attorney on the present trial. That since the commencement of this action, he has searched among his papers in the *iron chest and elsewhere for the letter of [*490] attorney, but cannot find it, and verily believes he has destroyed the same, not thinking it of any utility to be preserved."

Wilkes was also produced as a witness for the plaintiff, and deposed, " that he never delivered a letter of attorney out of his office to transfer any species of stock, until the party making it had acknowledged the execution of it before him, although he had sometimes delivered letters of attorney, which contained a blank for the attorney's name."

The plaintiff's counsel then offered to give *parol* evidence of the contents of the letter of attorney, to which the defendant's counsel objected. The judge allowed the objection, and determined that the plaintiff should not be permitted to give parol proof of the contents of the letter of attor-

ney. To this opinion of the judge the plaintiff's counsel tendered a bill of exceptions ; on which he brought a writ of error, returnable to this court.

A verdict was taken for the defendant, and judgment given thereon.

LANSING, Chancellor. The loss of the letter of attorney is not attributed, in this case, to *inevitable* accident, and the question to be decided, is, whether this is a case in which parol proof of its former existence and import is admissible.

That the exception to the strict rule of law, originally extended only to writings destroyed by inevitable accident, or withheld by the party opposed in interest to their introduction, is not contended. But on the part of the plaintiff, it is insisted, that an enlarged liberality has progressively obtained, and that to entitle the party to resort to parol proof of the contents of a deed, nothing more is necessary than to show that the incapacity to produce it, is not attributable to his positive fault, so as to involve a *mala fides*.

[*491]      *The decisions of the English courts, since the period Lord Mansfield began to preside in the court of king's bench, have assumed a degree of liberality in adopting the ancient principles of jurisprudence, not only to the exigencies which the extent and activity of modern commercial speculations have rendered unavoidable, but to every object of commutative justice which can affect the interests of the members of a great and opulent community.

In the general relaxation which has obtained, the strictness of this rule of evidence has, however, as it appears to me, been completely preserved ; and, if, in the multifarious complications incident to the state of property in Great Britain, its intrinsic worth has so effectually resisted constructive innovations, it is a strong argument of its correctness and utility.

That it has been so preserved, I think, must appear evident from a review of the cases which have been cited, to induce this court to pronounce the present case within the exception to the rule.

Livingston v. Rogers.

The general rule, as laid down in 10 Co. Rep. 93, is, that, as the best evidence the thing is capable of, the existence of the deed must be proved by its production. (Gilb. Law of Evid. 93.)

1. To enable the court to determine on its legal operation.

2. To show, that it is genuine, and not factitious; to which is added,

3. That it was not made on condition, as with power of revocation.

But great and notorious extremities, as by casualty of fire, and that all evidences were burnt in the party's house, are deemed exceptions. (10 Co. 93.)

This doctrine is corroborated by some other cases, (Jenk. Cent. 19; 1 Inst. 227; b,) which leave no doubt that great and notorious extremities only, were admitted *as exceptions; thus, loss by burning of houses, by [*492] rebellion or robbery, are instanced.

The case of *Villiers* v. *Villiers*, cited in argument, from 2 Atk. 71, lays it down generally, that parol evidence of a deed may be given, and the manner of its being lost, unless it happens to be destroyed by fire, or lost by robbery or any other unavoidable accident which, it is added, are sufficient excuses of themselves.

It could certainly never have been the intent of the reporter to make Lord Hardwicke say, that evidence of the *manner of the loss* might be given, unless it was destroyed by fire, &c. which, as it was a sufficient excuse, must necessarily render such proof useless, and yet such is obviously the scope of the expression. How then were the court to discover the manner of the loss, if it was a fact, respecting which no evidence was to be admitted?

The case is silent as to the facts to which these observations applied; but we find the case reported in Barnadiston's Chancery Reports, 307. There it appears, that deeds were alleged to be lost; that the lord chancellor declared it "doubtful whether there were such deeds;" but instead of directing an issue to determine whether the deeds had existed, and were so lost as stated, which seem the points raised by him in discussing the case, he directed an issue to try the validi-

ty of those deeds. But the broad principle laid down in At-
kyns is not even glanced at.

This case is so loosely and inaccurately reported, that I
think little reliance can be placed on either of the reports for
the exposition of the rule.

In the case of *Saltern* v. *Melhuish*, (Ambl. 247,) the pre-
cise point before the court was, whether the evidence of the
destruction of the deed was sufficient ?

It is stated in that case, that Roger Melhuish had burnt
the deed of assignment of a term, which the plaintiff claim-
ed under, and evidence was given of the contents;
[\*493]     \*that the deed of settlement in pursuance of which
the deed of assignment was made, was in custody
of Lady Berry, the surviving trustee therein named ; that
she had expressed apprehensions, a few days before her
death, that it would be taken away by Roger, with whom
she then lived ; that after her death, search was made for
it by her trustees, and that it was missing, and one of
the witnesses said, that she had often been present when
Roger's wife quarrelled with him for not destroying the deed.

The lord chancellor observes, that evidence of loss or de-
struction generally depends upon circumstances; and it is
very rare, even in case of destruction, that positive proof can
be had.

If it was necessary to lay down the general rule with great-
er latitude, to comprehend this case, it must have been ex-
tremely strict, for it certainly presents a combination of strong
circumstances ; the deed was in possession of Lady Berry, a
few days before her death ; she lived with Roger Melhuish ;
it was sought for in vain after her death ; Roger destroyed
the assignment; his wife quarrelled with him, because he
had not destroyed the deed of settlement, which of con-
sequence showed, that he had it in his possession. These
circumstances established the most forcible presumptions
against Roger, that he had either destroyed or secured it ;
and either being established, parol proof of the import of the
deed was admissible, on the ground of relief against spoliation.

The case of *Read* v. *Brookman*, (3 Term Rep. 151,) mere
ly proves, that in the court of king's bench, in England, the

form of declaring has been altered to obviate the difficulty
of maintaining an action on a deed lost or destroyed.  The
new form was devised to get rid of a technical nicety,
and to permit the party, in case of loss and destruction, to
prove the circumstances of the loss and the import
of the deed to the jury, instead of *stopping him    [*494]
at the threshold, by requiring its actual production,
at the time of filing the declaration.    It cannot, therefore,
bear upon the present case, even if it could be considered as
authority.

This court is now to determine a general rule of evidence ;
if it is precisely defined and well understood, it becomes an
authority, by which all the courts in the state are to regulate
their conduct.    Hence it becomes important to consider its
tendency.

In the cases cited, the instances to which the exceptions
of the rule apply, are loss by fire, rebellion and robbery.  All
these involve circumstances, supposed to be beyond the con-
trol of the party ; they are either the effect of inevitable ac-
cident, or of the acts of others committed in violation of law.
None of them go the length of this case; and as far as the
general rule is applied to particular cases, there is no instance
among the cases adduced in argument, or any others which
I have been able to discover, in which it has been extended
beyond these narrow limits.

It is true, analogies appear to have been contemplated, but
they were strict, and from the application of the general ex-
pressions respecting them, they appear not to have been es-
tablished with any degree of latitude.

If a departure is permitted, in construing the extent of this
exception, from cases of accident *not in the power of the
party to control;* if it is assumed as a rule, that the *neglect*
of a party, or, as it is termed in legal phraseology, *his laches*,
is to operate to make that evidence which originally was not
so, a door is opened to every species of contrivance, which
the ingenuity of interested and wicked men can suggest.   If
a deed is defective, so as not to stand the test of legal inves-
tigation, secreting or destroying it will render it valid.   If it
is incapable of being proved in the ordinary mode, evidence

of its existence and loss will supply the defect; and if it contains a clause of revocation on condition, a similar operation will render it absolute.

[*495]      *It was the business of the plaintiff to preserve his evidence; it was an inexcusable neglect, to leave it exposed to destruction from a want of care; and that it was left in the hands of his attorney, who destroyed it as useless, is no reason for permitting him to resort to a species of proof which would otherwise be incompetent.

I have supposed, in treating of this subject, that the destruction of the deed was fully proved; that however is not the case; it was put in an iron chest; it was searched for there and elsewhere; it was not found, and from these circumstances, the witness believes he has destroyed it. Whatever his belief may be on this occasion, this court, if they suffer his testimony to weigh in their decision, must, from the facts stated, be induced to believe with him. From those facts it is possible, nay, it is probable, that the deed may not have been destroyed.

I have not adverted to the observation made in argument, that this is a stock contract, which merits no peculiar indulgence. I think this consideration may be well admitted as a reason for not relaxing the rule of evidence in its favor.

Upon the whole, I have no doubt but that the opinion of the judge who tried the cause was correct, and I am, therefore, for affirming the judgment.

GOLD, Senator.    The question upon the bill of exceptions interposed in this cause, is, *whether it be competent for the plaintiff to give parol evidence of the contents of the letter of attorney to M'Evers, under the circumstances detailed in the bill of exceptions, or must the instrument itself be produced ?*   The ancient rule of the common law was highly rigid in this respect.   It dispensed with the production of instruments, in a few select cases, and then only for peculiar and specific causes.   But experience under that rule, has, in the progressive improvements of English jurispru-
[*496]      dence, resulted in a relaxation *of the law on this subject.   The non-production of instruments is now excused, for reasons more general, less specific, upon grounds

Livingston v. Rogers.

more broad and liberal than were formerly admitted. In *Read* v. *Brookman*, (3 Term Rep. 151,) a declaration on a deed was sustained, and the *profert dispensed with*, upon the general allegation of a loss by *time and accident*. In *Beckford* v. *Jackson*, (1 Esp. Rep. 337,) the plaintiff counted on a deed *lost* or *mislaid ;* upon which issue was taken, and the same was recognized, as warranted in law, by Lord Kenyon, who presided at the trial. Other cases are to be found in the English reports, of similar import, sanctioning the same principle. Upon the authority of those cases, and the reason of the thing, I am of opinion, that parol evidence of the contents of the letter of attorney to Mr. M'Evers ought to have been received, and that, therefore, error has intervened in this respect. Upon the admission of such testimony, should the trial disclose evidence, or reasonable grounds of suspicion of a suppression of the instrument, of *mala fides* in the plaintiff, or should the evidence of its existence and legal efficacy, not be clear and satisfactory, it will become the duty of the judge to direct and charge the jury for the defendant. A *venire facias de novo* must, therefore, be awarded.

A majority of the court being of the same opinion, it was thereupon ORDERED and ADJUDGED, that the judgment below be reversed ; that the record be remitted, and that a *venire facias de novo* be awarded.

Judgment of reversal.(*b*.)

(*b*) The principle of *Livingston* v. *Rogers* has been so generally affirmed, that it is utterly unnecessary to cite authorities in its confirmation. The English authorities will be found in 1 Phillipps' Evidence, Cowen & Hill's ed. 452, *et seq ;* Starkie's Ev. ed. 1842, p. 394 ; Gresley's Eq. Ev. 268. The American cases are collected with vast labor in 2 Cowen & Hill's Notes, p. 1214 –1233. See also Mr. Greenleaf's work on Ev. ed. 1842, vol. 1, p. 593, 594.